Good morning, Your Honors, and may it please the Court, my name is Michelle Freeman, and I endeavor Rodriguez, our student counsel for the petitioner Emma Bonilla De Ibarra. We are joined today by our supervising attorneys, Gary Watt and Tiffany Gaines. I hope to reserve about two minutes of my time for rebuttal. To begin, petitioner suffered persecution as a result of her membership in the social group, married women in El Salvador that are unable to leave their relationship. Specifically, petitioner credibly testified to the IJ about the physical abuse that she received by her husband, and at one point he pushed her with such force that she fell to the ground. And to provide further context to her husband Castro's violent tendencies, petitioner credibly testified that her husband had beat her children in her presence, and that one severe beating had been severe enough to leave permanent scarring on her son's back. In addition to this physical violence, petitioner was repeatedly verbally abused by her husband. As she credibly testified before the IJ and within her credible fear interview, Castro told petitioner that she was useless. He called her ugly and was always telling her that she was no good for anything. He would further talk to other women on the phone in front of her, and as petitioner summed it up to the IJ on page 116, Castro used to treat her very badly and get mad at her over every little detail. This abuse reached such heights that even her children asked her why she didn't just leave Castro. Well, she did, and she had sort of a... She did, Your Honor. However, she was pushed by Castro and fell to the floor in April of 2014, and it was in April that she then left Castro to live with her mother for three months and then subsequently left to the United States, which shows that she finally left this abusive relationship when it was reaching violent heights. And as petitioner explained, the persecution by Castro was the kind of persecution that slowly kills from the inside, and in addition to that abuse, Castro maintained his dominance over by petitioner by making her economically dependent upon him, as he would not allow her to leave the house to seek work, and as she stated in her credible theory review on page 230, Castro would push her and lock her in the house to prevent herself from working. This court defines persecution broadly, and therefore it doesn't have to be purely physical violence to rise to the level of persecution, but emotional trauma suffices as well. And substantial evidence in the record compels the conclusion that petitioner suffered persecution by her husband, both physically and emotionally, that rises to the level of persecution. And to turn to the persecution that petitioner suffered as a result of being a member of a law enforcement family, as petitioner's husband is still and remains a police officer within El Salvador. Petitioner testified in her credible theory review to three threats that she received by gang members. She was told by her neighbor, who happened to be a gang member, that she would pay the price for her husband's help in apprehending another gang member. And as she explained to the IJ on page 116, her home was subsequently burglarized. Her and Castro feared reporting this burglary so much that they waited two months. And she explained to the IJ that that was because they had been threatened before. Following the burglary, petitioner was once again threatened that bad things would happen to them if they continued with the investigation of the burglary. And unrelated to the burglary, petitioner was told by gang members that they would kill police officers' families. Looking at the totality of the evidence within the record, there is substantial evidence in the record that petitioner suffered persecution as a result. As a result of what? Which is the persecution that you're relying on here? Her husband or by the gangs? In regards to the first, we are alleged to, Social Groups are today, Your Honor, first, that she is a married woman that is unable to leave her relationship. And that would encompass all the persecution that petitioner suffered from her husband. Alternatively, petitioner is a member of a second social group, and that being her family. And this court has recognized that family is a prototypical social group. And she has received threats as a result of her marriage to Castro. This court, from gang members specifically, Your Honor, this court requires that the kinship bonds be sufficiently strong and discernible and that persecution be a foreseeable basis as a result of that relationship. Here, petitioner and Castro are married, and that is surely a strong kinship bond. But then she becomes the target of gangs when she is a woman who is married to a police officer within El Salvador. But has she suffered persecution by the gangs? Yes, Your Honor, but three threats. And does that rise to the question, does that rise to the level of persecution? Absolutely, Your Honor. The fact that a threat is unfulfilled is not dispositive. And rather, the court must look to see whether the individuals have the will or the ability to carry out a threat. And certainly gang members within El Salvador that control the country have the will and ability. And the country report notes that gang members seek out witnesses that testify against them and perhaps murder them for their testimony. What did the BIA say to that argument? Your Honor, the BIA did not elaborate on this issue, but rather adopted the IJ's decision-making matter for Bonilla. And what did the IJ say? The IJ made no mention of any threats that petitioner received from gang members, but rather focused on the strife within petitioner's family that resulted because petitioner's husband refused to justify in support of her brother. Even though in her credible fear interview there was three very specific threats that petitioner attributed to gang members as a result of her marriage to her husband. When these are all looked at in the totality of circumstances, the cumulative effect is that they rise to persecution and not mere harassment. Further, the government is unwilling and unable to control the persecution that petitioner suffers. In respect to the social group of married women that are unable to leave their relationship, petitioner was not required to report the abuse that she suffered by gassed out. And this court acknowledged that most recently in Briones Rodriguez v. Sessions, where it held that an individual does not have to report their persecution when it would be futile or dangerous. And certainly it would have been for petitioner here. Because he was a police officer? Yes, your honor. And when asked directly why, whether she believed the police would help her if she reported Castro, petitioner stated that they might help in part. And when asked when she meant by that, petitioner stated because he works for the same police. And providing even more context in her asylum application, stated that Castro thinks he can get away with the abuse because he works for the government and that he is protected by them. Thank you. We've got three minutes. Petitioner is requested if you want to respond. Certainly, your honor. Thank you. Ma'am, please, before I call you a minute, Representative Respondent, petitioner's claim based on mistreatment by her husband fails for three reasons. One, the record supports the determination that the harm she experienced does not rise to the level of persecution. Two, she could and did relocate, and she admitted that if she returned, she could get a divorce and live somewhere else. And three, in any event, there's no nexus to a protected ground because she failed to establish this as a factual matter and she is a member of the particular social group that she claims because she was, in fact, able to leave her husband, the immigration judge's determination that she was able to leave as an actual client. They did not give her the record. It fails to refer to some of that. And petitioner's claim based on fear of gangs is the wife of a police officer was never raised to the immigration judge in her testimony or in her asylum application. The immigration judge didn't discuss it, the court didn't discuss it, and the claim does not exhaust this court to consider it. Well, here she is, and she's, her husband is treating her rather badly, you would agree. Yes, ma'am. She's locked up in the house. She's not permitted to work, and she's also being threatened by gangs, and because her husband's a police officer, she says, the government will protect her. And a good lady, because she's also being mistreated by her husband as well. But she can't prove what? Persecution on account of one of those things, so therefore she loses because she's facing this double whammy. Well, I mean, she makes two claims. The first claim is based on mistreatment from her husband, and the three problems with that are the evidence fails to establish that she suffered any past persecution, that she fails to establish any future persecution because she can and did relocate, and three, she's not a member of the particular social group on which she relies because as a factual matter, she did actually leave her husband, so she's not a member of the group that she claims. In regards to the past persecution that she claims to have suffered, her husband persecuted her twice, and while this is very unfortunate, persecution is an extreme concept. Persecution doesn't have to be, in this context, doesn't have to be disciplined. It's true, Your Honor, but even the totality, including that she was pushed twice, and that the external harassment of her, these things just don't compel a finding that it's the extreme conduct needed to rise to the level of persecution. She claims she was a virtual prisoner in the house, but the record of indication testified that even while she was living there, she did leave the house, record 13132. Even leaving the house otherwise, the answer, yes, record 134. So he knew you were working outside the house, answer, yes, he knew. She could and did relocate. She was able to move in, move out, and leave for her mother, record 125. She had no problems with her husband while she was living with her mother, and she wasn't in hiding. Her husband knew she was there because he asked her to get the children's birth certificate, so she wasn't in hiding. The husband knew she was there. She just didn't have any problems, and while she was living with her mother, she was able to work. She worked in a diner. She worked as a maid. They also claim in the brief that the neighbors used to allow her to see her children, but what she actually testified to was that when she moved out in 2014, her children didn't move out with her. She never said that she wasn't able to see them, record 127, and now she learned that her children were both adults, so her husband couldn't look at her from a distance. In regards to her theme of future persecution for her husband, if she returned, she admitted her husband had created her a divorce, record 129. Again, she not only could relocate, but she already had successfully relocated. She further said that she could live with her sister, record 129, or move to the capital, record 130. In fact, when the immigration judge asked her to summarize her claim, she didn't mention anything about her husband. She just said that she came to the U.S. for work for three years, record 136. And, again, just although she relies on a membership in a particular social group, as the nexus to protect her ground, she has a passion and she's now a member of a group on which she relies, because she was able to name her husband. The immigration judge's determination in that regard is a factual finding, and there's nothing in the record that involves a personal event. On the theme regarding the particular social group, based on her marriage to her husband, based on mistreatment by her husband because of a particular social group, that is exhausted. You need to work with us on the brief, because the immigration judge just got a student report from the community. Which point is that? This is her fear of persecution from her husband on account of a particular social group based on her marriage and she couldn't leave. That's exhausted. Yes, the immigration judge just got a student report from her student report on him. But to be clear, the second basis of her claim, which is her fear of gangs based on a particular social group, is a member of a law enforcement family. That is not exhausted. She never mentioned it in her trial application. She never testified to it to the immigration judge. It wasn't discussed by the immigration judge. It wasn't discussed by the board. So it's not exhausted, and it's worth considering. You cannot consider it. The district had multiple opportunities to raise this point with the immigration judge. The immigration judge started by telling her, you can add anything you want to Record 106. The immigration judge asked her seven times in open-ended questions during direct what problems she had. He asked her twice why she feared going back. In the end, he asked her if there was anything else that she wanted to tell him, Record 135. Even after that, he gave her a final opportunity to summarize her claim, Record 135, 136. He offered her a chance to respond to the DHS attorney's closing argument. And six months prior to when she gave her testimony, at the time she filed her settlement application, the immigration judge advised her that the detail in her settlement application wasn't going to be enough, and she would have to provide more detail in her testimony. That was Record 195. So she had every opportunity to raise this main claim to the immigration judge. And in responding to all of the immigration judge's questions, she never mentioned the case of one of the kids who was part of her family because her husband was a police officer. She actually didn't discuss it, and it's not exhausted. Further questions? Thank you. We have some questions about the petition. Thank you, everyone. Thank you. Hello. Petitioner was unable to leave her marriage. As the BIA acknowledged the matter of ARCG, it held an almost indistinguishable social group, such as that is put forward here by Petitioner, that being married women in Guatemala that were unable to leave their relationship. In there, the applicant had been able to leave her husband for three months, and the court still held her to be a member of that social group, and that holding should be applied here. Because even when Petitioner did leave Castro, he still maintained control over her by telling her that she could only leave the clothes on her back and that her children could not come with her, as noted on pages 127 and 236 of the record. Mr. Freeman, do you dispute the government's position that she was not raised before? Absolutely, Your Honor. The gang matter was indeed exhausted before both the IJ and the BIA. It's just simply that the IJ mischaracterized Petitioner's claims. Petitioner stated in her credible fair interview three times that she had been threatened by gang members, particularly because her husband was a police officer within El Salvador. However, the IJ ignored those facts and rather focused on the strife within her family. But under the Exhaustion Doctrine, Petitioner's claims must be construed liberally, and therefore she only had to provide the general contours of her claim. And certainly by putting forth that she had been threatened repeatedly by gang members, she certainly met this low standard. Turning to the issue of relocation, it would not have been reasonable for Petitioner to relocate. This court requires that relocation not only be possible, but it also must be reasonable. Here, Petitioner has stated that there is no possibility that she could return to her home. And in her supplemental briefing, she explained that she has no education that would allow her to make a living wage on her own, and therefore she would be at the mercy of her friends and family for the rest of her life. But I agree with you that she raised the issue of persecution by gangs on account of her marriage to this officer. What should we do if you are correct that the BIA didn't address it and the IJ mischaracterized it? Well, the BIA and the IJ did have some conversation as to whether her family was a social group. And the context of this is her family is a social group, is still therefore exhausted, and this court couldn't reach that matter and find that she suffered past persecution. But should the court feel that this wasn't exhausted properly and that further information would need to be presented to the BIA, then we ask this court to please remand the BIA and respectfully request this court to grant the petition. Thank you. Thank you. Again, I think the court appreciates the participation of the students. And the case just argued is submitted. We will, this is a case statement, so we can at least get a case statement here. It's down the street. The case is argued and submitted, and we'll get the next case, which is United States v. Sugar.
judges: Schroeder, Rawlinson, Stafford